### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **NEC Corporation,**<br><br>          Plaintiff,<br><br>     v.<br><br>**Gaia, Inc.**<br><br>          Defendant. | Civil Action No.:<br><br>**TRIAL BY JURY DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

1.     Plaintiff, NEC Corporation ("Plaintiff" or "NEC") files this Complaint for patent infringement and demand for jury trial against Defendant Gaia, Inc. ("Defendant" or "Gaia"), and alleges as follows:

### NATURE OF THE ACTION

2.     This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") against Gaia for infringement of U.S. Patent No. 8,752,101 (the "'101 Patent") and U.S. Patent No. 8,909,809 (the "'809 Patent") (collectively the "patents-in-suit"), which are attached as Exhibits A and B, respectively, and incorporated herein by reference, pursuant to 35 U.S.C. § 271, to recover damages, attorney's fees, and costs.

### THE PARTIES

3.     Plaintiff NEC is a corporation organized under the laws of Japan, with its principal place of business at 7-1, Shiba 5-chome Minato-ku, Tokyo 108-8001 Japan.

4.     Upon information and belief, Defendant Gaia, Inc. is a limited liability company organized under the laws of the State of Colorado, with its principal place of business at 833 West South Boulder Road, Louisville, CO 80027.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under relevant statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has general personal jurisdiction over Defendant at least because Defendant is incorporated in Colorado.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

## FACTUAL ALLEGATIONS

8. Founded in 1899 and based in Tokyo, Japan, NEC (Nippon Electric Company) has through its 120-year history been a world leader and innovator across a variety of technical industries, including in electronic devices, computing, computer displays, semiconductors, mobile phones and communications, and most recently, software and artificial intelligence solutions. Over the years, NEC has expended significant resources on research, development, and innovation, and on capturing and protecting the fruits of those efforts in patent applications filed around the world. The patents-in-suit, which provide improved multimedia content delivery systems and methods, were born from this history of innovation.

9. NEC is the owner of the patents-in-suit with all substantial rights, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

10. The claims of the patents-in-suit are directed to patent eligible subject matter under 35 U.S.C. § 101. They are not directed to any abstract idea, and the technologies covered by the claims comprise content delivery and distribution systems and/or consist of ordered combinations

2

of features and functions that, at the time of the invention, were not, alone or in combination, well-understood, routine, or conventional.

11. On information and belief, Defendant offers content streaming services—such as the "Yoga International App"—that deliver content data from a transmission device to one or more reception devices (together, the "Accused Products"). For example, the Accused Products use a content distribution method applied to a distribution system including a transmission device and a reception device.

12. On information and belief, the Accused Products also include a content delivery system that includes a server device and a client device configured to be communicable with each other. The delivery system also comprises an application server system and one or more connection control servers.

13. On information and belief, the Accused Products also connect a client device, such as a laptop, tablet, or cellphone to a Gaia content delivery server. The content delivery server then requests content from a server, and then transmits that content to the user device, along with sub-content that is overlaid onto the content.

14. The patents-in-suit are described briefly as follows:

**The '101 Patent**

15. On June 10, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '101 Patent, entitled "DISTRIBUTION SYSTEM" after a full and fair examination. The '101 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

16. Claim 11 of the '101 Patent states:

> "11. A distribution method applied to a distribution system including a transmission device and a reception device configured to be capable of communicating with each other, the distribution method comprising:

3

transmitting content data, which is one content coded with any one code rate of a plurality of code rates different from each other, to the reception device, by the transmission device;

while receiving the content data transmitted by the transmission device, storing received data of the content data into a storage device and also reproducing the content based on the stored data, by the reception device;

determining the code rate based on a remaining time before reproduction start time set as time at which the reception device starts reproduction of the content from a present moment, and based on an available reproduction time, which is a time available for reproducing the content based on the content data stored in the storage device of the reception device;

changing the code rate of the content data to be transmitted to the reception device to the determined code rate, by the transmission device; and

starting reproduction of the content at the set reproduction start time, by the reception device." *See* Exhibit A.

17. Claim 11 of the '101 Patent recites a non-abstract method for distributing content data including a transmission device and a reception device.

18. Claim 11 of the '101 Patent provides the practical application of a method for distributing content data including a transmission device and a reception device.

19. Claim 11 of the '101 Patent provides an inventive concept for a method for distributing content data including a transmission device and a reception device.

20. Claim 11 of the '101 Patent provides specific elements/steps that accomplish the desired results to overcome the then existing problems in the relevant field of content delivery methods.

21. The specific elements/steps of Claim 11 of the '101 Patent were an unconventional arrangement of elements compared to prior art content delivery systems. As such, Claim 11 of the '101 Patent was able to unconventionally change the code rate of the content data to be transmitted to the reception device.

22. For example, the specification of the '101 Patent identifies that in content data distribution systems, the transmission code rate can be either extremely low or extremely high. Exhibit A, 2:8-12. The method of Claim 11 in the '101 Patent provides a non-conventional and

4

specific solution to the problem by reciting, at least, "determining the code rate based on a remaining time before reproduction start time set as time at which the reception device starts reproduction of the content from a present moment, and based on an available reproduction time, which is a time available for reproducing the content based on the content data stored in the storage device of the reception device."

23. Claim 11 of the '101 Patent recites a specific, inventive way of providing more efficient data transfer, by providing a transmitting device that adjusts the code rate of transmitted content data to the reception device.

**The '809 Patent**

24. On December 9, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '809 Patent, entitled "DELIVERY SYSTEM, DELIVERY METHOD, SERVER DEVICE, PROGRAM, AND CLIENT DEVICE" after a full and fair examination. The '809 Patent is attached hereto as Exhibit B and incorporated herein as if fully rewritten.

25. Claim 1 of the '809 Patent states:

> "1. A delivery system including a server device and a client device configured to be communicable with each other,
> the server device being configured to be able to transmit, to the client device, content data in which a piece of content is encoded at an arbitrary one of a plurality of different bit rates;
> the delivery system comprising:
> a remaining reproduction time acquisition unit for acquiring remaining reproduction time that is a period of time during which the content can be reproduced based on a portion of the data stored in the storage device of the client device that has not been reproduced; and
> a bit rate changing unit for calculating, according to a predetermined correction amount calculation procedure, a correction amount for correcting the bit rate of the content data transmitted by the server device based on the acquired remaining reproduction time and a preset target value so as to approximate the remaining reproduction time to the target value, and changing the bit rate based on the calculated correction amount,
> the bit rate changing unit being configured to calculate, when the bit rate is within a predetermined correction amount reducing range, a correction amount

having a smaller magnitude than a magnitude of the correction amount calculated according to the correction amount calculation procedure." *See* Exhibit B.

26. Claim 1 of the '809 Patent recites a non-abstract system for delivering content including a server device and a client device.

27. Claim 1 of the '809 Patent provides the practical application of a system for delivering content including a server device and a client device.

28. Claim 1 of the '809 Patent provides an inventive concept for a system for delivering content including a server device and a client device.

29. Claim 1 of the '809 Patent provides specific elements/steps that accomplish the desired results to overcome the then existing problems in the relevant field of content delivery systems.

30. The specific limitations of Claim 1 of the '809 Patent were an unconventional arrangement of elements compared to prior art content delivery systems. As such, Claim 1 of the '809 Patent was able to unconventionally transmit information from a server device to a client device efficiently despite fluctuating data reception rates.

31. For example, the specification of the '809 Patent identifies that in content data delivery systems, the delivery to the client device can be interrupted when the remaining reproduction time of the content becomes too short. Exhibit B, 1:31-33. The system of Claim 1 of the '809 Patent provides a non-conventional and specific solution to the problem by reciting, at least, "a bit rate changing unit for calculating, according to a predetermined correction amount calculation procedure, a correction amount for correcting the bit rate of the content data transmitted by the server device based on the acquired remaining reproduction time and a preset target value so as to approximate the remaining reproduction time to the target value, and changing the bit rate based on the calculated correction amount."

32. Claim 1 of the '809 Patent recites a specific, inventive way of providing more efficient data transfer, by preventing the content reproduction by the client device from being interrupted.

### Count I: Infringement of the '101 Patent

33. Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

34. On information and belief, Defendant directly infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 2, 4, 5, 11, 12, 14–16, 18, 20–23, 25, and 26 of the '101 Patent in violation of 35 U.S.C. § 271(a).

35. On information and belief, Defendant makes, has made, offers to sell, sells and/or uses the Accused Products.

36. On information and belief, the Accused Products use the content distribution methods and systems claimed in the '101 Patent. The Accused Products include servers configured to communicate with a reception device as described in and claimed by the '101 Patent. *See* Exhibit C. Thus, Defendant's Accused Products infringe the '101 Patent.

37. For example, use of the Accused Products includes running the Yoga International App. A Gaia server sends content data to the Yoga International App, and the code rate is changed during the transmission as described in and claimed by the '101 Patent. Thus, on information and belief, Defendant directly infringes the claimed method for content distribution as described in the '101 Patent by making, having made, offering to sell, selling and/or using the Accused Products including the claimed communication between a server and reception device. In particular, Defendant infringes the '101 Patent at least when its instructors teach classes on the Accused Products and/or its employees conduct testing on the Accused Products. Defendant further infringes the '101 Patent by training its customers on the use of the Accused Products and/or

7

promotion and/or sales of the Accused Products to Gaia's customers including, but not limited to, end-users and subscribers. A non-limiting and exemplary claim chart comparing Accused Products to Claims 1, 2, 4, 5, 11, 12, 14–16, 18, 20–23, 25, and 26 of the '101 Patent is attached hereto as Exhibit C.

38. Defendant has known of the '101 Patent at a date prior to the filing of this Complaint, and has known of the '101 Patent at least upon the filing of this Complaint. For example, NEC put Defendant on notice of its infringement of the '101 patent at least in a letter dated July 26, 2022.

39. On information and belief, Defendant indirectly infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 2, 4, 5, 11, 12, 14–16, 18, 20–23, 25, and 26 of the '101 Patent.

40. On information and belief, Defendant is liable for inducing infringement of the '101 Patent under 35 U.S.C. § 271(b) by having knowledge of the '101 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '101 Patent, with specific intent, by its customers.

41. Specifically, Defendant induces infringement of the '101 Patent by training, promotion, and/or sales of the Accused Products to Gaia customers for their use of the content distribution method as claimed in the '101 Patent. On information and belief, Gaia provides instructions to Gaia customers on the use of the Accused Products. Defendant's customers for the Accused Products directly infringe the '101 Patent by using the Accused Products as instructed by Defendant.

42. As alleged above, Defendant had knowledge of the '101 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of

8

Defendant's infringement of the '101 Patent at a date prior to the filing of this Complaint. Despite knowing that its actions constitute induced infringement of the '101 Patent and/or despite knowing that there was a high likelihood that its actions constitute induced infringement of the patent, Gaia nevertheless continues its infringing actions, and continues to make, use, sell, and/or offer for sale the Accused Products.

43. Gaia is liable for contributory infringement of the '101 Patent under 35 U.S.C 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part of the invention embodied in the '101 Patent, which Gaia knows to be especially made and/or especially adapted for use in infringement of the '101 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

44. Specifically, Gaia contributes to infringement of the '101 Patent by, inter alia, promotion, and/or sales of the infringing Accused Products to Gaia's customers for their use of the content distribution method as claimed in the '101 Patent. Those customers directly infringe the '101 Patent by using the Accused Products.

45. By engaging in the conduct described herein, Defendant has injured NEC and is thus liable for infringement of the '101 Patent, pursuant to 35 U.S.C. § 271.

46. Defendant has committed these acts of infringement without license or authorization.

47. As a result of Defendant's infringement of the '101 Patent, Plaintiff has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

48. As a result of Defendant's infringement of the '101 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

49. As alleged above, Defendant had knowledge of the '101 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of Defendant's infringement of the '101 Patent at a date prior to the filing of this Complaint. Despite such knowledge, Defendant has continued its infringing activities. Upon information and belief, Defendant's infringement of the '101 Patent is willful, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284. This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling Plaintiff to its attorneys' fees and expenses.

50. NEC is in compliance with 35 U.S.C. § 287.

**Count II: Infringement of the '809 Patent**

51. Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

52. On information and belief, Defendant directly infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 2, 8, 13–15, 26, 27, 30, and 31 of the '809 Patent in violation of 35 U.S.C. § 271(a).

53. On information and belief, Defendant makes, has made, offers to sell, sells and/or uses the Accused Products.

54. On information and belief, the Accused Products use the content distribution method claimed in the '809 Patent. The Accused Products include servers that transmit content data, and client devices that receive content data, at an adjustable bit rate as described in and claimed by the '809 Patent. *See* Exhibit D. Thus, Defendant's Accused Products infringe the '809 Patent.

55. For example, use of the Accused Products includes connecting a client device, such as a laptop, tablet, or cellphone to a Gaia content delivery server. The bit rate of the content data is changed according to the remaining reproduction time, as described in Claim 1 of the '809 Patent. Thus, on information and belief, Defendant directly infringes the claimed method for distributing content as described in the '809 Patent by making, having made, offering to sell, selling, and/or using the Accused Products including the claimed content distribution system. In particular, Defendant infringes the '809 Patent at least when its instructors teach classes on the Accused Products and/or its employees conduct testing on the Accused Products. Defendant further infringes the '809 Patent by training its customers on the use of the Accused Products and/or promotion and/or sales of the Accused Products to Gaia's customers including, but not limited to, end-users and subscribers. A non-limiting and exemplary claim chart comparing Accused Products to Claims 1, 2, 8, 13–15, 26, 27, 30, and 31 of the '809 Patent is attached hereto as Exhibit D.

56. Defendant has known of the '809 Patent at a date prior to the filing of this Complaint, and has known of the '809 Patent at least upon the filing of this Complaint. For example, NEC put Defendant on notice of its infringement of the '809 patent at least in a letter dated July 26, 2022.

57. On information and belief, Defendant indirectly infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 2, 8, 13–15, 26, 27, 30, and 31 of the '809 Patent.

58. On information and belief, Defendant is liable for inducing infringement of the '809 Patent under 35 U.S.C. § 271(b) by having knowledge of the '809 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '809 Patent, with specific intent, by its customers.

59. Specifically, Defendant induces infringement of the '809 Patent by training, promotion, and/or sales of the Accused Products to Gaia customers for their use of the content delivery system as claimed in the '809 Patent. On information and belief, Gaia provides instructions for the Accused Products to Gaia customers. Defendant's customers for the Accused Products directly infringe the '809 Patent by using the Accused Products as instructed by Defendant.

60. As alleged above, Defendant had knowledge of the '809 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of Defendant's infringement of the '809 Patent at a date prior to the filing of this Complaint. Despite knowing that its actions constitute induced infringement of the '809 Patent and/or despite knowing that there was a high likelihood that its actions constitute induced infringement of the patent, Gaia nevertheless continues its infringing actions, and continues to make, use, sell, and/or offer for sale the Accused Products.

61. Gaia is liable for contributory infringement of the '809 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part of the invention embodied in the '809 Patent, which Gaia knows to be especially made and/or especially adapted for use in infringement of the '809 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

62. Specifically, Gaia contributes to infringement of the '809 Patent by, inter alia, promotion, and/or sales of the infringing Accused Products to Gaia's customers for their use of the content delivery system as claimed in the '809 Patent. Those customers directly infringe the '809 Patent by using the Accused Products.

63. By engaging in the conduct described herein, Defendant has injured NEC and is thus liable for infringement of the '809 Patent, pursuant to 35 U.S.C. § 271.

64. Defendant has committed these acts of infringement without license or authorization.

65. As a result of Defendant's infringement of the '809 Patent, Plaintiff has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

66. As a result of Defendant's infringement of the '809 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

67. As alleged above, Defendant had knowledge of the '809 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of Defendant's infringement of the '809 Patent at a date prior to the filing of this Complaint. Despite such knowledge, Defendant has continued its infringing activities. Upon information and belief, Defendant's infringement of the '809 Patent is willful, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284. This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling Plaintiff to its attorneys' fees and expenses.

68. NEC is in compliance with 35 U.S.C. § 287.

## DEMAND FOR JURY TRIAL

69. Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

70. WHEREFORE, Plaintiff prays for the following relief:

71. That Defendant be adjudged to have directly infringed the patents-in-suit either literally or under the doctrine of equivalents, and to have indirectly infringed the patents-in-suit by inducement and contributory infringement;

 a. Entry of a preliminary and/or permanent injunction against Defendant pursuant to 35 U.S.C. § 283 and/or the equitable powers of the Court to prevent further infringement of the patents-in-suit;

 b. An award of damages to Plaintiff and against Defendant pursuant to 35 U.S.C. § 284 adequate to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement, including compensatory damages, lost profits, and/or a reasonable royalty;

 c. A declaration that Defendant's infringement is willful and an award of enhanced damages, in the form of treble damages, pursuant to 35 U.S.C. § 284;

 d. An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

 e. An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

 f. That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

 g. That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: July 28, 2022

Respectfully submitted,

*/s/ Sarah J. Guske*
Sarah J. Guske
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200
Fax: (415) 291-6300
E-mail: Sarah.Guske@bakerbotts.com

Michael E. Knierim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Fax: (212) 408-2501
E-mail: Michael.Knierim@bakerbotts.com

ATTORNEYS FOR PLAINTIFF NEC Corporation

ATTORNEY ADMISSION FORTHCOMING:

Robert L. Maier
Jennifer C. Tempesta
Nick Palmieri
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Fax: (212) 408-2501
E-mail: Robert.Maier@bakerbotts.com
E-mail: Jennifer.Tempesta@bakerbotts.com
E-mail: Nick.Palmieri@bakerbotts.com